ULRICH WEISENDANGER, Plaintiff, *v.* THE WESTCHESTER TRUST COMPANY, as Trustee Under the Last Will and Testament of GEORGE B. VALENTINE, Deceased, Defendant.

(Supreme Court, Westchester Special Term, March, 1908.)

Foreclosure of mortgages on land — Foreclosure by action and sale — Judgment or decree — Effect.
Former adjudication — Adjudication in particular actions or proceedings — Foreclosure suits.

In an action for the specific performance of a contract for the sale of real property, where it appears that the vendor's title comes through the foreclosure of two mortgages which he held upon the

property sold; that the property was triangular in shape; that the vendor's first mortgage did not cover a lot constituting the apex of the triangle; that between the vendor's two mortgages was a second mortgage held by a third person who was made a party to the foreclosure action under a general allegation to the effect that he had or claimed some lien subsequent to that of the plaintiff; that the holder of the intermediate mortgage appeared and interposed an answer alleging that the vendor's two mortgages were given for the same indebtedness and, upon the trial of the issues, his contention was sustained and that the judgment, following the allegations of the complaint, directed the sale of the entire tract, including the apex of the triangle which was not included in the vendor's first mortgage; held that the judgment of foreclosure was valid and effective against the holder of the intermediate mortgage as an adjudication that the first mortgage embraced the entire property, and the vendor's title under the sale of the premises pursuant to the decree of foreclosure was good.

ACTION for specific performance of a contract for the sale of real property.

William J. Wallin, for plaintiff.

Ralph Earl Prime, Jr., for defendant.

MILLS, J.   This is an action brought to secure specific performance of a contract for the sale by the defendant to the plaintiff of certain land situated in the city of Yonkers. There is no controversy as to any of the facts, except as to exact location of the parcel of land described in one of the mortgages hereinafter referred to.   The premises which, by the contract, the defendant agreed to sell and convey to the plaintiff and the plaintiff agreed to purchase, consist of a triangle of land formed by the intersection of Bennett avenue or Valentine street with Cook avenue in the city of Yonkers, the tract being bounded on the south by the northerly or northwesterly side of Bennett avenue or Valentine street for about 297 feet, and on the north or northwest by the south or southeast side of Cook avenue for a distance of about 332 feet, and on the east by a line passing through the block at right angles with said side of Bennett avenue, from Bennett avenue to Cook avenue.

Supreme Court, March, 1908.          [Vol. 58.

After examining the title the plaintiff objected that the defendant has not a good title to the very apex of the triangle, which has been designated in the proofs and upon the Baldwin map in evidence as lot 295, being about seventy-two feet in length along the base line, viz., the northerly or northwesterly side of Bennett avenue or Valentine street. The defendant maintained that it had good title to such parcel and offered to make conveyance of the entire tract in accordance with the terms of the contract. The plaintiff refused to accept such conveyance, upon the sole ground and objection that defendant's title to said lot 295 was defective.

The principal question, therefore, involved in this action is whether or not the defendant has good title to such lot. Its title comes through a foreclosure by it of two mortgages, it having purchased the premises on such foreclosure and taken a referee's deed thereof on the 27th of June, 1905. Such deed purports to convey the entire tract described in the contract. It appears that at the time when the foreclosure action was commenced there were three mortgages affecting or purporting to affect the premises in question or some part thereof.

The first mortgage, title to which came to the defendant through assignment, was given on the 28th of December, 1896, and recorded on the 28th of September, 1897. The parties agree that said mortgage did not cover said lot 295, but did cover the rest of the premises described in the contract.

The second mortgage was one given to James L. Valentine, one of the defendants in the foreclosure action, on the 7th of October, 1901, and was recorded on the thirtieth of that month. The description contained in this mortgage is somewhat obscure, and in the briefs submitted by the counsel for the defendant he contends that the description therein is not sufficiently definite so that the court can apply it to any part of the contract premises. In this contention I think he is mistaken. While the description does not seem to agree with the boundaries of lot 295, as they appear upon the Baldwin map and as they are implied or

involved in the description in the contract, yet it is manifest from its terms that it was intended to cover premises situated at the immediate intersection of the northerly side of Valentine street with the easterly side of the continuation of Cook avenue; and I am satisfied that that description was intended to cover premises at the immediate junction of those avenues and included, in whole or in part, within said lot 295. If, therefore, the lien of said mortgage, which now appears to be held by the estate of said James L. Valentine, he having died since the foreclosure action, still exists against the premises described in it, I think the defendant's title is not good and that the plaintiff's objection to such title, which is based solely upon the claim that such lien still exists, is valid.

The third mortgage was given to the defendant direct on the 14th of February, 1903, and was recorded on the sixteenth of that month.

The action to foreclose was brought upon both mortgages held by the defendant, viz., the first and third mortgages above recited. The complaint alleged each mortgage as a separate cause of action — the first as a first cause of action and the third as a second. It contained certain general allegations applicable to both causes of action. Among these was the seventeenth subdivision, which was to the effect that each and all of the defendants have or claim to have some claim or lien subject and subordinate to the lien of said mortgages; and the eighteenth subdivision, which alleged " that the lands and premises herein described upon which, at the time of the commencement of this action, the aforesaid mortgages are still a lien and encumbrance, are bounded and described as follows:" And then followed a description of the entire parcel as subsequently described and purported to be conveyed by the referee's deed, including the premises hereinbefore described as lot 295, the very apex of the triangle.

James L. Valentine, the then holder of the second mortgage above recited, was a party defendant to said action and duly served therein. He appeared by attorneys and interposed an answer, which in effect alleged that the in-

debtedness, for which the first mortgage described in the first cause of action was given, was included in the indebtedness for which the mortgage described in the second cause of action was given, *i. e.*, the third mortgage hereinbefore recited. A trial was had of the issues joined by his answer and resulted in his contention being sustained. Appropriate findings were made, signed and filed and judgment in due form entered thereon.

It, therefore, appears, as I construe the record, that the complaint alleged, the decision found, and the judgment adjudged that the first mortgage, the one set forth in the first cause of action, as well as the third mortgage, the one set forth in the second cause of action, embraced the entire premises.

The plaintiff's counsel here contends that, inasmuch as the first mortgage in fact did not include or cover lot 295, and the third mortgage, the one set forth in the second cause of action, alone covered that lot, the rule applies that, where a party holding a prior lien is made a defendant in a foreclosure action, under general allegations to the effect that he is one of other defendants having or claiming some lien subsequent, etc., the judgment of foreclosure will not be deemed to cut off such prior lien, but only to affect and bar any claim or lien on the part of such defendant subsequent to the mortgage foreclosed, such defendant not having in his answer asserted his alleged prior lien and submitted it to trial and adjudication in the action. This rule is well established, but it does not seem to me to be applicable to the case here. The difficulty is that, in the foreclosure action here, the complaint in the first cause of action alleged a lien prior in time to the alleged lien of said defendant. Therefore, it seems to me, that the general allegations of the complaint as to that mortgage must be construed as embracing the defendant's alleged lien as one apparently subsequent and subject to the lien of the first mortgage, inasmuch as the complaint in effect alleged that that first mortgage covered the premises in dispute, viz., lot 295.

If all the allegations relating specially to the third mort-

gage, viz., the second cause of action, had been stricken from the complaint, it would still have been a complete complaint for the foreclosure of the first mortgage as embracing the entire property.

I conclude, therefore, that the judgment of foreclosure was valid and effective against the defendant James L. Valentine, to the effect that the first mortgage was a lien upon the entire premises; and that the same were sold to satisfy such lien as well as the lien of the third mortgage; and that, therefore, his claim or lien upon the premises, if any, by virtue of the second mortgage, was cut off and barred by the foreclosure judgment.

I understand that such judgment has become final by due service of notice and entry thereof, so that it is now beyond question by any possible appeal. My decision, therefore, is that the plaintiff has failed to establish a case; and that the title tendered by the defendant was good against the objection made by the plaintiff; and that the plaintiff should have accepted the performance offered by defendant.

Judgment accordingly.